UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DELVIN NEAL                                                                                    PETITIONER
ADC #171726

V.                                         NO. 4:21-cv-01185-JM-JTR

DEXTER PAYNE, Director,                                                                  RESPONDENT
Arkansas Division of Correction

**RECOMMENDED DISPOSITION**

The following Recommended Disposition has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction**

Pending before the Court is a § 2242 Petition for Writ of Habeas Corpus filed by Petitioner Delvin Neal ("Neal"). On April 3, 2019, a Drew County jury found Neal guilty of trafficking a controlled substance (methamphetamine), possession of drug paraphernalia, and second-degree endangering the welfare of a minor. Neal was sentenced as a habitual offender to consecutive terms of thirty years for trafficking and ten years for possession. For the endangerment conviction, he was sentenced to a concurrent one-year term and fined $2500.00. Having exhausted his state court remedies, Neal is seeking relief from his convictions and sentences.

**II.  Background**

On April 4, 2018, Stephanie Austin and Katie Barnes, probation officers with the Arkansas Department of Community Correction, went to Neal's residence for a home visit. James Slaughter, a narcotics investigator from the Monticello Police Department, had informed the probation officers that Neal might be selling methamphetamine. Neal's girlfriend, Tiffany Wigfall, and five young children also lived in the home. Wigfall answered the door and told the probation officers that Neal was out with friends. When the officers heard a "noise in the back of the house," they entered the home to investigate. Trial Record 322. They found Neal lying on the bed in the bedroom. There were no other adults in the home. As Wigfall entered the bathroom and attempted to close the door behind her, Austin stopped her and directed her to leave the bathroom.

Slaughter and two other police officers were also present. They recovered just over 43 grams of methamphetamine from the toilet bowl in the bathroom. In the bathroom cabinet, they found a Ziploc bag with 357.3 grams of combined methamphetamine and dimethyl sulfone, a dietary supplement used to dilute methamphetamine. Scales with white residue were discovered in a bathroom drawer.[1] Both Neal and Wigfall were arrested.

Wigfall pled guilty to possession of drug paraphernalia. In exchange for the prosecution's agreement to dismiss her other charges, she testified at Neal's trial. Wigfall told the jury that the scales found in the bathroom belonged to her, and that Neal used them to weigh methamphetamine

---

[1] Under Arkansas law, a person engages in trafficking a controlled substance if he or she possesses, delivers or manufactures methamphetamine with an aggregate weight, including an adulterant or diluent, of 200 grams or more. Ark. Code Ann. § 5-64-440(b)(1). Amanda Blox, the State Crime Lab forensic chemist, testified that she used only a screening test on a second Ziploc bag of a white crystalline substance from the bathroom cabinet, and that she did not test white residue from the scales. She said that, pursuant to the Crime Lab procedure, she tested the recovered substances only to the extent necessary to substantiate the "highest charge"—200 grams in this case. Trial Record 314.

before selling it. She testified that, during the year that Neal had been living with her, he sold methamphetamine "maybe once a week." Trial Record 266. She said that they bought "MSM" (methylsulfonylmethane, also known as dimethyl sulfone) at a local store and kept it in a Ziploc bag in the bathroom cabinet. Trial Record 270. She testified that Neal gave the supplement to his dogs for inflammation.

Neal did not testify during the guilt phase, but the jury viewed his redacted video-recorded police interview.[2] After Neal was arrested and transported to the Drew County Detention Center, he was interviewed by Slaughter and another police officer, Ben Michel. In the interview, Neal said that the white crystal substance in the Ziploc bags from the bathroom was "for dogs." Trial Record 338. He said that he did not know anything about the methamphetamine found in the toilet bowl, and that he did not sell methamphetamine. When Michel asked Neal about the person supplying the area with methamphetamine, Neal responded that he "go[es] to a couple of dudes." Trial Record 339. He said the supplier delivered methamphetamine "to the whole town . . . two or three times a week," including to his house. Trial Record 341. Neal described the supplier's appearance and his vehicles. He said that, in exchange for probation, he could "give [the officers] about four or five people out here, and talk about big deals." Trial Record 344. Slaughter testified that he later worked with Neal to make "some controlled buys for law enforcement," but that the arrangement was not "successful." Trial Record 364. He told the jury that, while he was trying to use Neal as a confidential informant, Neal admitted that the methamphetamine found in the bathroom belonged to him and that he sold methamphetamine.

At the close of the State's case, Neal moved for a directed verdict, arguing there was insufficient evidence of the three charges—drug trafficking based on possession of

---

[2] Officers' statements about reducing Neal's charges in exchange for the name of the person bringing methamphetamine into the area were omitted from the video-recording played for the jury.

methamphetamine with an aggregate weight of 200 grams, possession of drug paraphernalia, and child endangerment. He argued the prosecution had not presented sufficient evidence that he had constructive possession of the methamphetamine, that the scales were used in connection with the methamphetamine, or that the children living in the house were in danger. The trial court denied the motion, and Neal did not call any witnesses.

During the penalty phase, the jury heard that, when Neal was arrested, he was on probation for 2012 convictions of possession of methamphetamine or cocaine (less than two grams) with intent to deliver and of fleeing in a vehicle. The prosecution introduced the Drew County Circuit Court sentencing order revoking Neal's probation and sentencing him to consecutive terms of ten and six years, respectively.

On direct appeal, Neal argued the trial court erred in denying his motion to suppress the police interview. The Arkansas Court of Appeals rejected Neal's argument and affirmed the convictions. *Neal v. State,* 2020 Ark. App. 417, 2020 WL 5651069. When the mandate issued on December 17, 2020, Neal had sixty days to file a petition for post-conviction relief. Ark. R. Civ. P. 37.1(c)(2). A week after the February 15, 2021 due date passed, Neal filed a pro se motion seeking an extension of time to file a Rule 37 petition. *Doc. 7.* The circuit court denied the extension motion, *Doc. 8,* and Neal did not appeal.

### III. Discussion

Neal, a state prisoner, may seek a writ of habeas corpus in federal court, if he is "in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2254(a). Before seeking habea*s* review, Neal must have exhausted available state remedies by fairly presenting each of his claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is procedurally defaulted when the

state court declined to review it because the petitioner failed to comply with a state procedural rule. *Coleman,* 501 U.S. at 729–32. Procedural default also occurs when a petitioner did not present a claim in state court and a state court remedy is no longer available. *O'Sullivan*, 526 U.S. at 848. If a claim is procedurally defaulted, this Court can consider it only if Neal establishes either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

On claims adjudicated on the merits in state court, this Court may grant *habeas* relief only if Neal satisfies statutory requirements and United States Supreme Court "precedents governing the appropriate exercise of equitable discretion." *Brown v. Davenport* (*Mike Brown*), 596 U.S. __, 142 S. Ct. 1510, 1524 (2022). Neal must demonstrate that the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to federal law if the state court "applies a rule that contradicts the governing law" set out by the Supreme Court, or if it considers facts that are "materially indistinguishable" from a Supreme Court case and decides differently. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Neal also must pass the *Brecht* test for assessing the state court error's prejudicial effect. *Mike Brown*, 142 S. Ct. at 1524. He must show that the error had "substantial and injurious effect or influence" on the verdict or sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotations omitted).

Neal argues that he is entitled to habeas relief because the trial court's denial of his suppression motion was constitutional error. He contends that his trial lawyer's directed-verdict argument was constitutionally deficient. Neal also says that his appellate lawyer's work was

professionally unreasonable when he did not challenge the denial of the directed-verdict motion. Neal alternatively argues the cumulative effect of these errors warrants habeas relief.

Because Neal fairly presented the trial error claim on direct appeal, deference review of the Arkansas Court of Appeals decision is required. 28 U.S.C. § 2254(d). Neal did not raise the ineffectiveness claims or the cumulative error claim in state court, and state court remedies are no longer available. These three claims therefore are procedurally defaulted.

### A. Suppression of Custodial Statement

Neal argues that, because his statement was obtained in violation of his right to due process and his Fifth Amendment privilege against self-incrimination, the trial court erroneously denied his motion to suppress the police interview. He says his statement was involuntary because it was induced by the officers' false promises of leniency.

The Arkansas Court of Appeals considered the voluntariness of Neal's statement under a two-step test. First, the Court of Appeals considered whether the officers made an ambiguous leniency promise, "making it difficult to determine if it was truly a false promise of leniency." *Neal,* 2020 Ark. App. 417, *4, 2020 WL 5651069, **2. After reviewing the police interview, the appellate court found "there was enough contradiction within the statements by the officers to conclude that they were ambiguous." 2020 Ark. App. 417, *6, 2020 WL 5651069, **3.

> Here, [Neal] lists several statements by the officers that this court finds concerning. In particular, Officer Michel's offer to eliminate a misdemeanor charge on the information sheet given to the prosecutor was inappropriate, and his statement that the time Neal will spend in prison depends on what he tells the officers was an egregious mischaracterization of the judicial process. However, Neal's responses to these attempts by Michel to elicit information was not a confession but a steadfast denial that the drugs found in the home were his and a denial that he was "the man" selling drugs in the community. Additionally, Officer Slaughter tempered Michel's attempts with repeated clarifications that the prosecutor is the ultimate decision maker when it comes to which charges Neal will face and that any recommended charges made by the officers can be changed by the prosecutor. It is also clear that [Neal] understood that the prosecutor alone would the make the final decision

> regarding charges, at one point in the interview asking the officers what kind of deal could be made with the prosecutor. . . . Additionally, Slaughter testified he did, in fact, speak to a deputy prosecuting attorney about a reduction in charges in exchange for appellant's cooperation as a confidential informant.

*Neal,* 2020 Ark. App. 417, *5, 2020 WL 5651069, **2.

Because the Court of Appeals found ambiguity in the officers' statements, it proceeded to the second step and examined Neal's vulnerability to the officers' statements. Neal had not addressed this issue on appeal, so the appellate court considered the trial court's related findings:

> In its order, the circuit court specifically found that [Neal] was thirty-two at the time of his interrogation; that he was given his *Miranda* rights prior to interrogation; that he was told by officers that he could stop the interview at any time to which he replied, "I mean, I'm listening"; and that he declined to cooperate in any manner. Additionally, our de novo review of the record and the interview itself shows that [Neal] was familiar with the legal system as he was on probation at the time of the interview and that the interview lasted less than forty minutes.

*Neal,* 2020 Ark. App. 417, *6, 2020 WL 5651069, **3. Based on the totality of the circumstances, the Court of Appeals affirmed the trial court's denial of the suppression motion.

The Arkansas Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Under clearly established federal law, whether a statement is voluntary must be considered under the totality of the circumstances—"the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). Factors include the accused's age, his education and intelligence, the length of the police interview, and the nature of the questioning. *Id.* The ultimate issue in determining voluntariness is whether Slaughter and Michel extracted a confession from Neal by the use of false promises of leniency such that "his will [was] overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut,* 367 U.S. 568, 602 (1961). Because the Court of Appeals properly considered the voluntariness of Neal's statement under the totality of the circumstances, *Neal,*

7

2020 Ark. App. 417, *3–6, 2020 WL 5651069, **2–3, the state court decision did not unreasonably apply clearly established federal law.

Based on this Court's review of the suppression hearing record, the Court of Appeals did not make an unreasonable determination of the facts. During the police interview, Neal denied any knowledge of the methamphetamine found in the bathroom. When the officers discussed what they had heard about Neal selling methamphetamine, Neal denied that he was the primary supplier in the area. The officers then asked him about the identity of the major supplier. Neal eventually admitted that he got his methamphetamine from "a couple of dudes," Trial Record 339, but he was reluctant to give any more information about his supplier unless he could avoid prison. Michel continued to press Neal, stating that his cooperation would result in reduced charges and sentences. While Neal described the supplier's appearance and his vehicles, he refused to name the supplier. At the end of the interview, Neal told Slaughter and Michel that, "[i]f he—I mean, if they give me probation, I can give you about four, five people out here, and talk big deals." Trial Record 344. Michel's statements—overstating the officers' control over the charges filed against Neal and any related prison time—are troubling. There was little clarification that the prosecutor was the final decision-maker with respect to filing any charges and offering a plea agreement. The totality of the circumstances, however, do not show Neal's "will [was] overborne and his capacity for self-determination critically impaired." *Culombe,* 367 U.S. at 602. While Neal made incriminating statements during the interview, he was not induced by any false promises of leniency. He was on probation at the time of his arrest, so he was familiar with the procedure related to filing criminal charges. He refused to name the supplier, and he recognized that the officers did not have the authority to recommend probation.

Neal, moreover, has not demonstrated any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht,* 507 U.S. at 637. There was overwhelming evidence without the police interview that Neal had constructive possession of the methamphetamine and drug paraphernalia (scales) found in the bathroom. When there is joint occupancy of the premises, constructive possession requires control and knowledge of the contraband. *Loggins v. State,* 2010 Ark. 414, *4–5, 372 S.W.3d 785, 789–90. "This control and knowledge can be inferred from the circumstances," including "an accused's suspicious behavior coupled with proximity to the contraband . . .." *Id.* The trial evidence was that, while Wigfall answered the front door, Neal, the only other adult in the home, attempted to flush the methamphetamine down the toilet. Wigfall, moreover, testified that Neal used her scales to weigh methamphetamine before selling it. The trial evidence was that untested white residue was present on the scales. Slaughter testified that, while he was working with Neal as a confidential informant, Neal admitted that the methamphetamine belonged to him.

Under deference review, Neal's statements during the police interview were voluntary and therefore properly admitted at trial. Based on overwhelming evidence of guilt, any error was harmless under the *Brecht* standard. The claim therefore is denied.

### B.  Ineffectiveness Of Counsel

Neal next contends his trial lawyer's directed-verdict argument on the drug trafficking and the paraphernalia possession charges was constitutionally deficient. He says his appellate lawyer committed constitutional error when he failed to appeal the denial of the directed-verdict motion. These ineffectiveness claims were procedurally defaulted when Neal failed to file a timely Rule 37 petition in state court.

Neal argues procedural default of the ineffectiveness of trial counsel claim is excused under *Martinez v. Ryan.* 566 U.S. 1 (2012). In *Martinez,* the United States Supreme Court recognized an equitable exception to the general rule that post-conviction counsel's ineffectiveness cannot constitute cause to excuse procedural default. *Id.* The Supreme Court held that, when state procedures require petitioners to raise ineffectiveness of trial counsel claims in collateral proceedings, the absence of counsel or attorney error in the initial collateral-review proceeding is cause to excuse procedural default of substantial ineffectiveness of trial counsel claims. *Id.* at 14. The Supreme Court expanded the equitable exception to apply when state procedural rules do not provide a "meaningful opportunity" to raise ineffectiveness of trial counsel claims on direct appeal. *Trevino v. Thaler*, 569 U.S. 413, 428 (2013). The *Martinez-Trevino* equitable exception applies in *habeas* review of Arkansas state court decisions. *Sasser v. Hobbs,* 735 F.3d 833, 851–53 (8th Cir. 2013).

Neal contends the *Martinez-Trevino* equitable exception should be extended to situations in which a pro se inmate failed to initiate post-conviction proceedings. He says the Supreme Court's reasoning—pro se inmates are at a disadvantage during collateral review proceedings—applies when a pro se inmate does not file a timely Rule 37 petition. The Supreme Court, in *Martinez*, however, addressed a defective collateral-review process, not a proceeding that was never initiated. Recognizing the limits of *Martinez,* our courts have held the equitable exception does not apply when the petitioner failed to file a timely Rule 37 petition. *See, e.g., Bell v. Kelley,* No. 5:17-cv-234, 2018 WL 3653317, *6 (E.D. Ark. Jun. 29, 2018), report and recommendation adopted by 2018 WL 3650228 (Aug. 1, 2018); *McCullough v. Kelley,* No. 5:15-cv-162, 2016 WL 1039521 (E.D. Ark. Feb. 25, 2016), report and recommendation adopted by 2016 WL 1047369 (Mar. 15, 2016). This is not a case like *Castillo v. Kelley*, where procedural default was considered

under a *Martinez-Trevino* analysis because the habeas petitioner had not been represented by post-conviction counsel and the trial court had specifically instructed the petitioner that he could not file a Rule 37 petition. No. 5:14-cv-368, 2015 WL9595464, *3 (E.D. Ark. Sept. 17, 2015), report and recommendation adopted by 2016 WL 30663 (Jan. 4, 2016).

Because Neal failed to file a timely Rule 37 petition, procedural default of the ineffectiveness of trial counsel claim cannot be considered under a *Martinez-Trevino* analysis. Neal makes no other argument for excusing procedural default. His procedurally defaulted ineffectiveness of appellate counsel claim fares no better. The United States Supreme Court has declined to extend the equitable exception beyond procedurally defaulted ineffectiveness of trial counsel claims. *Davila v. Davis*, 582 U.S. 521 (2017).

Even if the equitable exception applies to Neal's ineffectiveness of trial counsel claim, the outcome is the same. Procedural default is not excused under a *Martinez-Trevino* analysis because the ineffectiveness claim is not substantial. *Martinez,* 566 U.S. at 14. Neal argues his trial lawyer should have made a better directed-verdict argument that he lacked constructive possession of the methamphetamine and drug paraphernalia (scales). Neal, however, has not demonstrated constitutional ineffectiveness under the familiar *Strickland v. Washington* standard of deficient performance and resulting prejudice. 466 U.S. 668 (1984). The lawyer's argument did not fall "outside the wide range of reasonably professional assistance." *Id.* at 690. There is not a reasonable probability that, with an improved argument, there would have been a different verdict. *Id.* at 694. Neal also says his trial lawyer failed to renew the directed-verdict motion, but renewal was not required because the defense did not present any evidence. *Robinson v. State,* 317 Ark. 17, 22–23, 875 S.W.2d 837, 841 (1994).

Because Neal has not shown any excuse for procedural default, the ineffectiveness claims are denied. Even if the *Martinez-Trevino* equitable exception applies to the procedurally defaulted ineffectiveness of trial counsel claim, Neal has not overcome procedural default because the claim is not substantial.

### C. Cumulative Error

Neal makes no argument that procedural default of the cumulative error claim is excused. Based on record review, this Court, moreover, finds no reason to excuse the default. The claim is also denied under alternative merits analysis. 28 U.S.C. § 2254(b)(2). Habeas relief is not available based on the cumulative effect of constitutional error claims. *Harris v. Bowersox,* 184 F.3d 744. 755 (8th Cir. 1999). This claim is denied.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT: (1) Neal's Petition for Writ of Habeas Corpus be DENIED; (2) this habeas action be DISMISSED with prejudice; and (3) pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, no certificate of appealability be issued.

DATED this 19th day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE