IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DELVIN NEAL
(ADC #171726)                                            PETITIONER

V.                  NO. 4:21-cv-1185-JM/JTR

DEXTER PAYNE, DIRECTOR,
ARKANSAS DIVISION OF
CORRECTION                                        RESPONDENT

## PETITIONER'S OBJECTIONS

The petitioner, Delvin Neal, submits the following objections to the magistrate's Recommended Disposition in this habeas corpus case.

### Introduction and Background

On April 4, 2018, Probation and Parole Agent Stephanie Harris and other law enforcement officers traveled to a residence in Monticello, Arkansas where the petitioner, Delvin Neal, was residing with his girlfriend, Tiffany Wigfall. Wigfall was the owner or renter of the residence, and Neal was on probation at the time. The officers went to the residence to conduct a so-called "home visit," although the purpose of the "visit" was to conduct a warrantless search for drugs.

The officers found what they believed to be methamphetamine in the bathroom of the residence. At the time in question, Neal was in the bedroom but Wigfall was in the bathroom where the drugs were found. The officers also found a set of digital scales in the bathroom.

Neal was arrested and charged with trafficking drugs, possession of drug paraphernalia, and endangering the welfare of a minor. On the day he was arrested, Neal gave a recorded interview with officers Ben Michel and James Slaughter of the Monticello Police Department. During that interview, Neal made incriminating statements. The record

reflects that he made those statements in response to false promises of leniency extended by Officer Michel.

Prior to trial, Neal filed a motion to suppress his April 4, 2018 statement. That motion was denied, and the case proceeded to a jury trial. At that trial, Neal's statements were introduced into evidence for the jury to consider. The jury found Neal guilty and sentenced him to thirty (30) years for trafficking a controlled substance; ten (10) years for possession of drug paraphernalia; and one (1) year for endangering the welfare of a minor. The trial judge ordered the trafficking and paraphernalia sentences to be served consecutively for a total of forty (40) years in prison.

Neal appealed to the Arkansas Court of Appeals, arguing that the trial court erred in denying his motion to suppress. On September 23, 2020, that court affirmed. *Neal v. State*, 2020 Ark. App. 417 (2020). Neal petitioned for rehearing and review, but those were also denied. The mandate issued on December 17, 2020.

Neal did not "properly file" an application for state post-conviction relief under Ark. R. Crim. P. 37 on ineffective-assistance-of-counsel grounds in the Arkansas state courts. On December 8, 2021, however, Neal filed a timely habeas corpus petition in this Court (Docket Entry 1). The State responded (Docket Entry 7); Neal filed a Reply (Docket Entry 9); and the magistrate ultimately recommended that Neal's petition be denied.

Neal objects to the magistrate's proposed findings and recommendation for essentially the same reasons and grounds he relied upon in his habeas corpus petition (Docket Entry 1) and in his Reply (Docket Entry 9). These reasons and grounds are as follows:

## Claims for Relief

### I.

### NEAL'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS WERE VIOLATED BY THE STATE'S USE OF HIS INCRIMINATING STATEMENT AGAINST HIM AT TRIAL. FURTHER, THE ARKANSAS COURT OF APPEALS' ADJUDICATION OF THIS CLAIM WAS "UNREASONABLY WRONG" UNDER 28 U.S.C. §2254(D) AND THE MAGISTRATE'S CONTRARY FINDING AND RECOMMENDATION SHOULD BE REJECTED.

The Fifth Amendment to the United States Constitution provides in pertinent part: "No person . . . shall be compelled in any criminal case to be a witness against himself." This constitutional guarantee is designed to ensure that no involuntary confession, or other inculpatory statement, is admissible to convict the accused of a criminal offense. *Culombe v. Connecticut,* 367 U.S. 568 (1961).

It has also long been held that a confession or an inculpatory statement is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. *Bram v. United States,* 168 U.S. 532 (1897). In *Culombe,* the Supreme Court explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess or make the inculpatory statement. If his capacity has been impaired, that is, "if his will has been overborne" by coercion or inducement, then the statement or confession is involuntary and cannot be admitted into evidence. 367 U.S. at 602.

When a court is determining whether a confession was given voluntarily, it must consider the "totality of the circumstances." *Boulden v. Holman,* 394 U.S. 478, 480 (1969). Arkansas law also embodies this approach. *Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003).

The magistrate recommended that relief be denied on this claim, reasoning that the claim was addressed on the merits in the Arkansas Court of Appeals and that therefore the deferential standard of review under 28 U.S.C. §2254(d) applies. The magistrate went on to find that the Arkansas Court of Appeals' decision was not "unreasonable" under §2254(d)(1) or (2). The magistrate's findings and recommendation on this claim should be rejected.

In this case, Officer Michel made multiple unambiguous false promises of leniency; therefore, Neal's statement is involuntary as a matter of law. During the interview, Michel made the following unambiguous and false promises of leniency to Neal:

* "You see all this right here? Some of that can disappear."

* "Like I said, man, the time you spend in prison depends on what you tell us. You are probably going to see some time. . . . But how much time you spend in there is what we can control. . . . Now what [Officer Slaughter] turns in to the prosecutor depends on what you tell us right now. I can tell you right now, you give me a name to start looking at that I do not know, I will scratch off a charge right now. I got no problem. I will take terroristic threatening (sic) I do not give a damn."

* "[W]e are the only ones that (sic) can turn that shit in."

* "I mean, we can probably take one felony off. . . . The drug paraphernalia charge now, we can take care of that. We can take that shit off if you give us somebody. The misdemeanor drug paraphernalia, we can probably take care of that."

* "Like I said, we can take that shit and chunk it out, but you have got to help us."

* "I cannot make that promise that you ain't going to go [to prison]. I can make that promise about how long you may go [to prison]."

* "That is what these charges will be unless you give me some information and I will start whittling away at some of them that I can. The misdemeanors, yeah, I can take - I can get rid of some of those."

* "Like the last one I went in there on, they offered her three years for delivery. On a charge she had for delivery, they offered her about six years. The offered her six years. When I walked in there to the prosecuting attorney's office the next day, they gave her three years." . . . She is down

4

three years in the ADC because of what I told. And that is exactly what I would tell the prosecutor, what I was told. I did not give the prosecutor no names. I just said, hey, she done this, this, and this. Like I said, they had her down for six years and when I walked out, they put her to three. She is doing four and a half months. That is it. So that is how that went. I mean, I cannot tell you - I cannot give you a number. I cannot. Because I do not know what number they are going to come up with. All I can tell you is what has been in the past. I had one that went off of five years. When I left there, they got five years probation. That is just - you know, what he is doing?

* "I mean, that is as good as we can offer right now, man, cause we do not - that is as far as we can go."

* " I tell you what, man, that is a start. Okay. We going to take one of those off right here right now just for that little bit of information right there. I know it does not seem like much, but that is what. That is a year in jail right there, ain't it?"

* "That terroristic threatening. I know it is a bullshit charge anyway. I am going to take it off so the judge ain't going to see it. He ain't even going to know it was on there. It ain't even going to be on the paperwork. Just cause you game me that right there."

* "I will take that charge off and it does not even exist no more. That is a bullshit charge. I do not like that motherfucker anyway that you cussed out. I cuss him every day."

The foregoing promises made by this officer are what prompted Neal to provide a seriously incriminating statement to him. In response to these repeated unequivocal promises of leniency, Neal essentially admitted to the officer that he was involved in drug trafficking and that he was receiving his supply from another individual, about whom he provided a certain amount of information. These incriminating statements, of course were heard and considered by the jury in deciding Neal's fate. Contrary to the magistrate's finding, there is really no question that these statements by Neal contributed to the jury's finding of guilt on the trafficking and drug paraphernalia charges. Indeed, it took the jury all of fifteen minutes to deliberate and reach a guilty verdict.

Habeas corpus relief may be granted on this claim if the state court's adjudication of the claim resulted in a decision that "was contrary to, or involved an unreasonable

application of clearly established Federal law" or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). *See Harrington v. Richter,* 562 U.S. 86 (2011).

> A decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." [*Williams,* 529 U.S.] at 405, 120 S.Ct. 1495. A decision is "an unreasonable application of clearly established federal law if it is clearly erroneous, that is, if no "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786, 178 L.Ed. 2d 624 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed. 2d 938 (2004)).

*Armstrong v. Hobbs,* 698 F.3d 1063, 1066 (8th Cir. 2012).

In Neal's case, the magistrate's finding(s) should be rejected and habeas corpus relief should be granted under either §2254(d)(1) or (d)(2) because the magistrate's finding(s) are themselves unreasonable and are not based on a full and fair objective review of the state court record.

First, the Arkansas Court of Appeals' decision is based on an unreasonable application of clearly established law - namely, Supreme Court precedent dating back for decades which holds that a statement is involuntary and inadmissible if it is induced by false promises of leniency. Indeed, the promises make by this officer to Neal are far more explicit and specific than the police officer's promise in *Pyles v. State,* 329 Ark. 73, 947 S.W.2d 754 (1997) that he would "help [the defendant] in every way in the world" and the officer's promise in *Tatum v. State,* 266 Ark. 506, 585 S.W.2d 957 (1979) that he would "do all he could to help [the defendant]." (In both *Tatum* and *Pyles,* the Arkansas Court of Appeals reversed and remanded for a new trial.) Rather than follow its own precedent and United States Supreme Court precedent, the Arkansas Court of Appeals in this case erroneously reasoned that officer

6

Michel's statements to Neal were "tempered" by statements made by officer Slaughter.

The Arkansas Court of Appeals' decision is also based on an unreasonable determination of the facts under 28 U.S.C. §2254(d)(2), and the magistrate's contrary finding(s) must be rejected. Had the court correctly viewed the record, it would have determined that officer Michel's promises were unquestionably "unambiguous" and that they were by no means "tempered" by anything officer Slaughter said. The Arkansas Court of Appeals stated that "there is enough contradiction within the statements by the officers to conclude that they were ambiguous." This is contrary to common sense because it ignores the very clear message sent to Neal by officer Michel's repeated statements: that if Neal provided information to them, some of his charges would go away. That is how Neal interpreted the promises, and that is how a reasonable arrestee in Neal's position would have also interpreted them. To interpret it any other way is to ignore common sense.

The magistrate in this case correctly observed that "Michael's statements - overstating the officers' control over the charges filed against Neal and any related prison time - are troubling. . . ." Nevertheless, the magistrate went on to say that the "totality of the circumstances . . . do not show Neal's 'will [was] overborne and his capacity for self-determination critically impaired. . . .'" Recommended Disposition (Docket Entry 10) at p. 8. The magistrate further found that even if constitutional error was committed here, it is harmless because "there was overwhelming evidence" that Neal had constructive possession of the meth and paraphernalia found in the bathroom of the residence. (Docket Entry 10 at p. 9)

We have already addressed the magistrate's first finding here. This state court record reflects the opposite of what the magistrate found on the question of whether Neal's incriminating statements were knowingly, voluntarily, and intelligently made. For the

reasons outlined above, the magistrate's finding should be rejected.

On the "harmless error" question, Neal submits that the magistrate is also wrong. Contrary to the magistrate's finding, "overwhelming evidence" of Neal's guilt is not reflected in this record. This was not an "open and shut" case. When the officers arrived, Neal was nowhere near the drugs or the paraphernalia. To the contrary, his girlfriend was actually in the bathroom where it was all found (some of it in the toilet). This was a jointly occupied residence; indeed, it was not even Neal's residence but instead belonged to his girlfriend. There is no fingerprint evidence against Neal, nor is there any other forensic link between Neal and the contraband. In sum, but for the introduction of Neal's incriminating statement to the officers, it is likely he would have been acquitted (even though this case was not defended under a "joint possession" theory) because it was anyone's guess who - Neal or his girlfriend - actually possessed the drugs and paraphernalia.

For these reasons, this Court should reject the magistrate's Recommended Disposition; find that Neal's incriminating statements were involuntary and that their introduction into evidence violated his rights under the Fifth and Fourteenth Amendments,; find that this was not "harmless error;" and hold that the Arkansas Court of Appeals' contrary decision is "unreasonably wrong" under 28 U.S.C. §2254(d)(1) or (d)(2). The Court should grant the Great Writ on this claim.

## II.

### NEAL WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL AND/OR APPELLATE COUNSEL, AND "CAUSE" EXISTS UNDER *MARTINEZ V. RYAN*.

Neal raised two additional claims of ineffective assistance in his habeas petition: ineffective assistance of trial counsel and ineffective assistance of appellate counsel - both

relating to the sufficiency of the State's evidence. The magistrate found that these two claims are defaulted and further found that "cause" is not shown under *Martinez v. Ryan*, 566 U.S. 1 (2012) because (1) *Martinez* does not apply if the inmate/petitioner failed to file a state post-conviction petition at all and (2) even if it did apply, Neal's claims are not "substantial" under *Martinez*.

Neal first notes the standard for evaluating claims of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court recognized that the right to effective assistance is essential to protect the fundamental right to a fair trial. *Id.* at 684-685. To prevail on a claim of ineffective assistance, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. Counsel's performance is held to the standard of reasonable professional assistance, and he has a duty to bring "such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* at 688. To succeed on an ineffective assistance claim, an applicant for post-conviction relief must show that counsel's performance fell below an "objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 688, 696. *See also Williams v. Taylor,* 529 U.S. 362 (2000); *Wiggins v. Smith,* 539 U.S. 510 (2003). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Johnson v. Lockhart,* 921 F.2d 796 (8th Cir. 1991).

> With the prejudice test, we evaluate the outcome of the proceeding in question. The ineffective performance must create a reasonable probability that the result of the proceeding is unreliable; the ineffectiveness must undermine our confidence in the proceeding. This means more than just a conceivable effect on the outcome but something less that the oft used "more likely than not" or preponderance standards.

*Kenley v. Armontrout*, 937 F.2d 1298, 1301 (8th Cir. 1991).

Under the *Strickland* standard of objective reasonableness, defense counsel must make a reasonable investigation in the preparation of a case or make a reasonable decision not to conduct a particular investigation. *Strickland,* 466 U.S. at 691. Counsel's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-691. *See also Foster v. Lockhart,* 9 F.3d 722 (1993); *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir. 1991). "[C]ounsel must exercise reasonable diligence to produce exculpatory evidence, and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Kenley,* 937 F.2d at 1304. Further, "[t]he decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." *Chambers v. Armontrout,* 907 F.2d 825, 828 (8th Cir. 1990).

Here, trial and appellate counsel were both ineffective; Neal's default is excused; and this Court should accordingly reject the magistrate's findings and recommendation.

First, trial counsel was ineffective for failing to properly challenge the sufficiency of the evidence presented by the State at trial. Neal's best defense - and probably a winning defense - was one that was never seriously advocated by his trial lawyer. As discussed above, this was (or should have been tried as) a "constructive possession" case. The drugs and paraphernalia were found in a bathroom in a residence jointly occupied by Neal and his girlfriend. The residence did not even belong to Neal; it belonged to her. It was Neal's girlfriend, not Neal, who was in the immediate vicinity of the contraband when it was found. The State established no real link whatsoever between the contraband and Neal,

On these facts, trial counsel should have moved specifically for a directed verdict under a "constructive possession" theory at the close of the State's case and specifically

10

articulated why the State had failed to meet its burden. Counsel did articulate a directed verdict motion; however, the entirety of his argument consisted of the following statement: "Obviously, the State's going on constructive possession, but as the Court knows mere presence is not enough. . . ." (T. 366) Counsel also failed to make any directed verdict motion at all on the paraphernalia count based on a constructive possession theory. (*Id.*)

These failures and omissions cannot be legitimized by dubbing them as "trial strategy." "Labeling counsel's decision as strategic or tactical cannot immunize it from a Sixth Amendment challenge." *Kellogg v. Scurr,* 744 F.2d 1099 (8th Cir. 1984). In this case, counsel's performance was professionally unreasonable because counsel failed to notice and capitalize on a winning defense and preserve it for appellate review.

The meritorious nature of this claim becomes very clear when we take a quick look at Arkansas law on constructive possession. In *Hodge v. State,* 303 Ark. 375, 377-78, 797 S.W.2d 432, 434 (1990), the Arkansas Supreme Court stated:

> We have established the requisite proof for constructive possession in a long line of cases concerning joint occupancy. Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control, and management over the contraband.

This has long been the law in Arkansas. And, an application of it to Neal's case must result in the conclusion that the State failed to meet its burden of establishing "some additional factor" linking Neal to the drugs and the paraphernalia. For these reasons, both *Strickland* prongs are satisfied, and Neal is entitled to habeas corpus relief.

11

The same is true with regard to Neal's habeas claim that counsel on direct appeal was ineffective for failing to argue a sufficiency-of-the-evidence argument in the Arkansas Court of Appeals.

The standard for ineffective assistance of appellate counsel claims is basically the same as the Supreme Court in *Strickland* set out. The constitutional right to effective assistance of appellate counsel is also well settled. *Evitts v. Lucey,* 469 U.S. 387 (1985). Once counsel has undertaken the appeal, he has the duty "to support his client's appeal to the best of his ability." *Anders v. California,* 386 U.S. 738, 744 (1967). Although there is no duty to argue every "colorable" issue in the case, when counsel fails to raise an issue that would have called for reversal, he fails to render effective assistance. *Jones v. Barnes,* 463 U.S. 745 (1983); *McCoy v. Court of Appeals of Wisconsin, Dist. 1,* 486 U.S. 429 (1988).

For all the reasons discussed above, the sufficiency of the evidence was a meritorious issue that absolutely should have been raised in Neal's direct appeal. We acknowledge that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *See Smith v. Murray,* 477 U.S. 527, 537 (1986). That is not the situation in Neal's case, however, because the sufficiency of the evidence of constructive possession was perhaps the most meritorious issue that could have been raised on appeal. There can be no strategic or tactical basis for failing to present this argument to the Arkansas Court of Appeals. Prejudice is also present because, for the reasons discussed above, if the argument had been made there is a reasonable probability that the court would have reversed and dismissed both the trafficking conviction and the paraphernalia conviction.

Both prongs of the *Strickland/Jones/McCoy* standard are satisfied on the merits. For the reasons state below, Neal's procedural default is also excused under *Martinez.* The

magistrate's findings that (1) *Martinez* does not apply and (2) Neal's claims are not "substantial" under *Martinez* should both be rejected for the following reasons:

In *Martinez,* the Supreme Court held that where an initial state court collateral review proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance of counsel, the prisoner may establish "cause" for a default of an ineffective assistance claim in two circumstances: where the inmate was without counsel in the initial review collateral proceeding in which the ineffective assistance claim could/should have been raised, or where the prisoner proceeded with counsel who failed to render effective assistance in the collateral proceeding. The Court found no real difference between this "first designated [collateral] proceeding" and a direct criminal appeal, to which the right to counsel attaches, stating:

> Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim. This is because the state habeas court "looks to the merits of the clai[m]" of ineffective assistance, no other court has addressed the claim, and "defendants pursuing first-tier review . . . are generally ill equipped to represent themselves" because they do not have a brief from counsel or an opinion of the court addressing their claim of error.

The Court went on to emphasize that representation by counsel, and effective representation by counsel, are just as important and necessary in the inmate's state collateral "first-tier" collateral proceeding as they are in the inmate's direct appeal:

> As *Coleman* recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims. Without the help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-

> review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim. To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.

The Court further pointed out that "the same would be true" with respect to the inmate who was totally without counsel to represent him in his first-tier collateral proceeding:

> The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.
>
> A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel.

Based on these concerns, and as an "equitable" matter rather than as a "constitutional" matter, the Court ultimately held that when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, "cause" for a procedural default is present in two circumstances: (1) where the inmate did not have counsel in those proceedings, or (2) where the inmate did have counsel in those proceedings, but counsel was ineffective.

The question in the instant case is whether *Martinez* applies and excuses Neal's failure to raise and litigate his ineffective assistance claims to a decision on the merits in his proceedings in the state circuit court under Ark. R. Crim. P. 37. Neal submits that it does, because it cannot be disputed that Ark. R. Crim. P. 37 is the type of collateral "first-tier" collateral state court proceeding to which the Court's decision in *Martinez* is tailored. This is because under Arkansas law, claims of ineffective assistance of trial counsel cannot be raised on direct appeal, and Rule 37 provides the first vehicle, as a practical matter, for an inmate to raise and litigate claims of ineffective assistance of counsel. *See Trevino v. Thaler,* 569 U.S. 413 (2013); *Sasser v. Hobbs,* 735 F.3d 833 (8th Cir. 2013).

Second, although the Court in *Martinez* did not specifically address the situation involving an inmate who failed to properly file a petition for collateral relief, the reasoning behind the Court's decision strongly supports, if not demands, a finding that such an inmate is entitled to the benefit of the decision. The Court in *Martinez* emphasized and discussed, in detail, the *pro se* inmate's disadvantaged position in collateral proceedings in order to point out the importance of representation by competent counsel in those proceedings. As noted above, the Court specifically pointed out that the *pro se* inmate "is in no position to develop the evidentiary basis for a claim of ineffective assistance . . ." The Court noted that "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel."

In doing so, the Court in *Martinez* explained the basis for its holding that the lack of counsel, or the ineffectiveness of counsel, in collateral proceedings involving ineffective assistance claims for relief amounts to "cause" for a procedural default: These circumstances amount to "cause" because of the importance of this collateral stage of a case in States where this is the first opportunity for an inmate to raise a claim of ineffective assistance of counsel. The Court did not go so far as to state that the collateral stage of a case is a "critical stage" of the proceedings for purposes of the Sixth Amendment right to counsel, but it was not necessary for the Court to go that far. The point is that the collateral review stage of a case, in a State where a claim of ineffective assistance must be raised at that stage or forever waived, is so important that the absence of the guiding hand of effective counsel at that stage amounts to "cause" for any procedural default on federal habeas. Regardless of whether the collateral stage (in Arkansas, the "Rule 37" stage) is a "critical stage" or not, the point made by the Court in *Martinez* is that the right to effective assistance of counsel at trial, and the corresponding right to effective assistance at trial, are "bedrock": so fundamental and so

15

deserving of protection by the courts that an inmate who has no counsel or has ineffective counsel in collateral proceedings cannot be found guilty of defaulting his claims relating to those fundamental rights.

These are the underpinnings of the Court's decision in *Martinez,* and they compel a finding that "cause" exists for Neal's procedural default.

The magistrate reasoned that in order to obtain the benefit of *Martinez,* the petitioner must have actually and properly filed a petition for state post-conviction relief. On its face, the decision in *Martinez* clearly provides a refuge for the very few Arkansas inmates who are lucky enough or savvy enough to prepare and properly file their own Rule 37 petitions. Those who make it that far, and who either proceeded *pro se* or with ineffective counsel in those proceedings, may rely on *Martinez* and establish "cause" for any defaulted ineffective assistance claims they raise in federal court. The question is whether inmates like Delvin Neal - the most disadvantaged and the ones with the least amount of legal knowledge - should also receive the benefit of *Martinez.* The reasoning behind the Court's decision in *Martinez,* as well as logic and common sense, compel an affirmative answer. The Court's opinion in *Martinez* was based almost exclusively on two fundamental truths: (1) that the right to counsel, and effective counsel, at trial is "bedrock" and so essential to our criminal justice system that it must be protected; and (2) that inmates are ill-equipped to attempt to assert that right on their own. The Court made it crystal clear that the right to effective assistance of trial counsel is far too important and fundamental to say that it was waived simply because the inmate was too unskilled to properly raise it.

The Eighth Circuit has not had occasion to address the question of whether the benefit of *Martinez* may be extended to an inmate who failed to properly file a petition for collateral relief in the state courts. And contrary to the State's position, the lower courts in Arkansas

are split on this question. Indeed, at least one United States Magistrate Judge in the Eastern District of Arkansas has held that *Martinez* can apply to all of these prisoners.

More specifically, United States Magistrate Judge Beth Deere has held that an inmate who failed to file a Rule 37 petition at all is entitled to the benefit of *Martinez*. *Castillo v. Hobbs,* U.S.D.C. No. 5:14-cv-00368 JM/BD. That case involved Arkansas inmate Rene Castillo, who had a potentially meritorious *Hill v. Lockhart* federal habeas corpus claim for relief. Castillo, who pleaded guilty to a drug charge, never filed a petition for relief under Rule 37 at all. Nevertheless, Judge Deere reasoned in her <u>Recommended Disposition</u>: "The lack of counsel raises a . . . colorable cause for Mr. Castillo's apparent procedural default. In some circumstances, the lack of counsel can establish cause for a petitioner's procedural default. *Martinez v. Ryan,* 132 S.Ct. 1309 (2012); *Trevino v. Thaler,* 133 S.Ct. 1911 (2013). Mr. Castillo's lack of counsel, and the trial judge's specific instruction that he could not file a Rule 37 petition, brings this case squarely within the *Martinez* rule for establishing 'cause.'" That recommendation was accepted in full by United States District Judge James Moody. *Castillo,* U.S.D.C. No. 5:14-cv-00368 JM/BD (Jan. 4, 2016). The magistrate in Neal's case found *Castillo* distinguishable because Mr. Castillo, unlike Neal, was specifically told he could not file a Rule 37 petition. This is not an adequate reason. Regardless of the reason, Castillo still failed to file a Rule 37 petition but a finding of "cause" was still made in federal court. The "bright line" rule relied upon by the magistrate in Neal's case is not a "bright line" rule at all.

Further, *Castillo* is not the only lower federal court decision in Arkansas holding that *Martinez* can apply to a prisoner in Neal's situation. In *Love v. Payne,* U.S.D.C. No. 5:19-cv-252 DPM (E.D. Ark. 2020), Chief Judge Price Marshall addressed the question and stated:

On Love's defaulted claims, he makes a strong argument from *Martinez's* reasoning that this exception applies. There is no binding precedent, though: and courts have divided. *Compare, e.g., Jones v. Pennsylvania Board of Probation and Parole,* 492 F. App'x 242, 246-47 (3d Cir. 2012) (unpublished opinion) with *Castillo v. Kelley,* E.D. Ark. No. 5:14-cv-368-JM-BD, 2015 WL 9595464 at *3 (E.D. Ark. 2015).

In sum, Neal is entitled to the benefit of the Supreme Court's decision in *Martinez.* The logic behind *Martinez* compels a finding that the decision in that case should inure to Neal's benefit, even though he did not properly file a Rule 37 petition in the state circuit court. Neal, as much or more than any other inmate with defaulted claims of ineffective assistance, has "cause" for his default under the logic and reasoning that shaped the Court's decision in *Martinez.*

Also contrary to the magistrate's finding, Neal's ineffective assistance claims (relating to the sufficiency of the evidence of constructive possession) are "substantial" under *Martinez.*

In *Martinez,* the Supreme Court held that in order for "cause" to be established, the defaulted claim must be "substantial." For a claim to be "substantial" within the meaning of *Martinez,* the petitioner/prisoner must only show "that the underlying ineffective-assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." The test for "substantiality" is the same as the test for a Certificate of Appealability, which requires only that the claim be "debatable among jurists of reason." *Miller-El v. Cockrell,* 537 U.S. 322 (2003). The Eighth Circuit has held that the COA standard is a "modest" one. *Randolph v. Kemna,* 276 F.3d 401, 403 n.1 (8th Cir. 2002). Indeed, "the COA can be granted" so long as "the petitioner's claim does not appear utterly without merit after a quick look." *Mateo v. United States,* 310 F.3d 39, 42 (1st Cir. 2002) (following *Jefferson v. Welborn,* 222 F.3d 286, 289 (7th Cir. 2000).

In the present case, the "modest" test for "substantiality" is satisfied for all the reasons set out in Neal's habeas corpus petition and in these objections. This Court should accordingly reject the magistrate's findings and determine that "cause" exists for Neal's defaulted ineffective assistance claim.

## Conclusion

For the foregoing reasons, the Court should reject the magistrate's <u>Recommended Disposition</u>; proceed to the merits of Neal's claims; grant the Great Writ; and order Neal retried or discharged from his confinement.

Respectfully submitted,

/s/ Craig Lambert
Craig Lambert
Ark. Bar No. 87100
P.O. Box 839
Heber Springs, AR 72543
(501) 374-3559
wclambert@aol.com

*Counsel for Delvin Neal*