UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DELVIN NEAL                                                                        PETITIONER
ADC #171726

V.                                        NO. 4:21-cv-01185-JM-JTR

DEXTER PAYNE, Director,                                                    RESPONDENT
Arkansas Division of Correction

## ORDER

The Court has received a Recommendation for dismissal from United States Magistrate Judge J. Thomas Ray and the objections filed by Petitioner Delvin Neal. After careful consideration and a *de novo* review of the record, the Court concludes that the Recommendation should be, and hereby is, approved and adopted as this Court's findings in its entirety.

I.      Background

A Drew County, Arkansas, jury convicted Delvin Neal of drug trafficking, possession of drug paraphernalia, and three counts of endangering the welfare of a minor and Neal was sentenced to 40 years' imprisonment. Neal appealed the conviction. On appeal, Neal argued that the trial court should have suppressed statements Neal made during an interrogation by Officer Ben Michel and Officer James Slaughter immediately after his arrest on these charges. Neal claimed that the officers offered to eliminate or reduce charges against him if he would name his drug supplier. Neal was on probation at the time of the arrest. The Court of Appeals affirmed the conviction.

The Court of Appeals first examined the officers' statements during the interrogation of Neal.

In particular, Officer Michel's offer to eliminate a misdemeanor charge on the information sheet given to the prosecutor was inappropriate, and his statement that the time Neal will spend in prison depends on what he tells the officers was an egregious mischaracterization

of the judicial process. However, Neal's responses to these attempts by Michel to elicit information was not a confession but a steadfast denial that the drugs found in the home were his and a denial that he was "the man" selling drugs in the community. Additionally, Officer Slaughter tempered Michel's attempts with repeated clarifications that the prosecutor is the ultimate decision maker when it comes to which charges Neal will face and that any recommended charges made by the officers can be changed by the prosecutor. It is also clear that appellant understood that the prosecutor alone would the make the final decision regarding charges, at one point in the interview asking the officers what kind of deal could be made with the prosecutor.

*Neal v. State*, 2020 Ark. App. 417, 5 (2020). The court found that there was enough contradiction within the officers' statements to conclude that the statements were ambiguous. The court went on to consider the vulnerability of Neal. The court noted that Neal did not argue that he was particularly vulnerable but instead relied on his contention that his statement was involuntary as a matter of law based upon the officers' statements. The court noted that Neal was thirty-two years old at the time of the interrogation, was given his Miranda rights before being questioned, was told he could stop the interview at any time, and that he declined to cooperate. *Id.* at 6. In addition, the court noted that Neal was on probation at the time of the interrogation, so he was familiar with the legal system, and the interview lasted less than forty minutes. Based upon the totality of the circumstances, the court concluded that the officers' statements were ambiguous but Neal "was not especially vulnerable to the officers' statements." *Id.* at 6.

Neal petitioned the Court of Appeals for rehearing which was denied. He filed a petition for review to the Arkansas Supreme Court which was also denied. Neal did not file a timely Rule 37 petition for relief, and his motion for extension of time was denied. Neal did not appeal the denial. He subsequently filed a petition for writ of habeas corpus pursuant to §2254 with this Court.

The Court has reviewed the entire record in this case. In addition to the habeas petition and briefing, the Court has thoroughly reviewed the transcript of the interrogation, the circuit court transcript, the record from the direct appeal to the Arkansas Court of Appeals, the opinion of the

Court of Appeals, Neal's motion for extension of time to file his Rule 37 petition, the State's response, and the order denying the extension.

II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act constrains the power of a federal habeas corpus court to grant a state prisoner's application for a writ of habeas corpus on claims adjudicated on the merits in state court. The writ may issue only if the State court adjudication either resulted in a decision "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). In addition to these statutory requirements, a state prisoner must satisfy United States Supreme Court "precedents governing the appropriate exercise of equitable discretion—including *Brecht*." *Brown v. Davenport*, 596 U.S. 118, 134 (2022); *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A decision is "contrary to" Federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Carpenter v. Lock*, 257 F.3d 775, 778 (8th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of" the case before it. *Carpenter*, 257 F.3d at 778. "Therefore, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' The state court's application must also be unreasonable. Whether

a state court's application was unreasonable is an objective inquiry." *Id.* (quoting *Simmons v. Bowersox,* 235 F.3d 1124, 1130 (8th Cir. 2001)).

III.    Procedural Default

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012)). "The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds. *Id.* at 730. (citing *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977)).

In addition, the United States Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman*, 501 U.S. at 731. "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Id.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Neal appealed the trial court's order denying his motion to suppress the statements he made to Officers Slaughter and Michel. Therefore, this Court applies the general federal habeas standard of review. It is undisputed, however, that Neal did not raise the ineffective assistance of trial counsel or appellate counsel claims or the cumulative error claim on appeal. State court remedies are no longer available. Therefore, Neal has procedurally defaulted those claims.

Due to Neal's procedural default, the Court can only consider his defaulted claims if he establishes either: (1) cause for the default and actual prejudice; or (2) that the default will result

in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Neal counters, claiming the default should be excused under *Martinez.*

IV.    Analysis

Neal advances two primary arguments. The first argument, that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the State's use of his incriminating statements, which were made during interrogation and subsequently used against him at trial. The second argument also alleges violations of Neal's Fifth, Sixth, and Fourteenth Amendment rights, but for ineffective assistance of counsel at both the trial and appellate levels.

A. Incriminating Statements Made During Interrogation

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (quoting *Bowersox*, 235 F.3d at 1132). "Whether a confession is involuntary is judged by the totality of the circumstances. *Id.* (citing *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001). The court must look at the "conduct of the officers and the characteristics of the accused." *Id.* "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *Id.* (citing *United States v. Astello*, 241 F.3d 965, 966 (8th Cir.)).

In his brief, Neal refers to twelve statements made by officers during interrogation which he claims were "unambiguous false promises of leniency," and thus make these statements involuntary as a matter of law. As the "totality of the circumstances" is used to determine whether a statement was voluntary, the Court does not look at each reference on its own. The statements made by Neal and the officers in between these twelve statements must be factored in the analysis.

As Judge Ray and the Arkansas Court of Appeals pointed out, certain statements made by the officers were "an egregious mischaracterization of the judicial process," and otherwise blatantly wrong. *Neal*, 2020 Ark. App. at 5. Petitioners counsel points out that the officers offered to help the defendant, which can be a violation of Arkansas law. *See Pyles v. State,* 329 Ark. 73 (1997) (Arkansas Court of Appeals remanding for new trial for officer statements that they would "help [the defendant] in every way in the world."); *Tatum v. State,* 266 Ark. 506 (1979) (Arkansas Court of Appeals remanding for new trial for the officer's statement that he would "do all he could to help [defendant].") Those statements were wrong indeed, but there were almost a dozen times the officers clarified that it was up to the prosecutor, though their recommendations would likely be considered with regards to charges brought. The officers never shouted or physically threatened Neal and the interview lasted less than forty minutes. The Court of Appeal's conclusion that the officers' statements were ambiguous is not an unreasonable determination of the facts or an unreasonable application of clearly established Federal law. The court must next consider Neal's vulnerability.

Neal claims that Officer Michel's promises of leniency "prompted" Neal to make incriminating statements. The Court of Appeals found that Neal was not overborne by the officers' statements. Neal was a thirty-two-year-old man at the time of the interrogation. He had been arrested and convicted previously for drug trafficking and was on probation at the time of his arrest and interrogation. Neal had been read his *Miranda* rights and was told he could stop the interrogation at any time. He did not admit that the methamphetamine found in the bathroom belonged to him or that he sold it. He told the officers that someone from out of town supplied drugs to everyone in Monticello. His discussion with the officers sounded more like a negotiation

that he was voluntarily engaging in. He gave the officers a few hints about the supplier's identity and offered to give names if the officers could get him a deal.

> "Even assuming that a reasonable person would view the [officers'] statements as a promise, a promise made by law enforcement 'does not render a confession involuntary per se.'" *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001); *see also Tippitt v. Lockhar*t, 859 F.2d 595, 598 (8th Cir.1988) (concluding that defendant's confession was voluntary despite officers' promise), *cert. denied*, 490 U.S. 1100, 109 S.Ct. 2452, 104 L.Ed.2d 1007 (1989)). "A promise is merely one factor in the totality of the circumstances." *Id. See Simmons*, 235 F.3d at 1133 (stating that a promise made by law enforcement is only one relevant consideration). Whatever the facts of an individual case, our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination. Thus, it is not enough to show that the authorities' representations were the but-for cause of a confession. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (concluding that a but-for type analysis is inadequate because "[u]nder such a test, virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind").

*United States v. LeBrun*, 363 F.3d 715, 725–26 (8th Cir. 2004). Even assuming the officers' statements were a promise and that the statements induced Neal to make incriminating statements, the Court's analysis remains the same: whether "the overall impact of the interrogation caused the defendant's will to be overborne." *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005) (noting "that officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. None of these tactics render a confession involuntary.") "This is a very demanding standard. …" *LeBrun*, 363 F.3d at 726. The Court finds that the facts of this case do not rise to that level.

Furthermore, it appears that the officers did not make a false promise. At the onset of the interrogation, Neal was looking at seven charges (possession with intent to distribute, possession of drug paraphernalia- felony, possession of paraphernalia- misdemeanor, maintaining drug

premises, tampering with evidence, terroristic threatening, five counts of endangering welfare of a child). Of these potential charges, only three went to trial. It is entirely possible that the officers and prosecutor were true to the officers' words, and because of Neal's cooperation, dismissed or failed to file four charges. If true, the officers' statements were not "false promises" of leniency at all. A promise is not illegal, only a false promise. *See King v. State*, 877 S.W.2d 583, 588 (Ark. 1994) ("We have long held that 'it is a *false* promise that renders a confession involuntary.'") (emphasis in the original) (internal citation omitted)). The Court finds that Neal's will was not overborne by false promises during the interrogation.

Even if the Court were to find that Neal had established that the Court of Appeals had unreasonably and erroneously applied the law, Neal must also pass the *Brecht* test for assessing the state court error's prejudicial effect.  *Brown*, 596 U.S. 118 (2022). Neal has the burden to show that the error had a "substantial and injurious effect or influence" on the verdict or sentence. *Brecht v. Abrahamson*, 507 U.S. at 637.

Neal does little to argue on the injurious effect other than claiming that there was almost no other evidence pointing to Neal having possession of the drugs or paraphernalia. The State put on a constructive possession theory, claiming that Neal and his girlfriend, Wigfall, and three children were the only occupants of the premises where the drugs were found. Wigfall and the children answered the door when the officer's knocked. Wigfall told the officers that Neal was not there. However, moments later the officers heard noise and walked into the house to investigate. They found Neal on the bed in the bedroom near the bathroom where they soon found methamphetamine in the toilet and in the bathroom cabinet. The jury could reasonably deduce that it was Neal who attempted to flush the drugs because he was the only person in the house who was not visible to the officers when they knocked on the door. Neal argues that it was Wigfall who was

in the vicinity of the bathroom when the drugs were found there. However, according to the testimony of Probation and Parole Agent Stephanie Harris Austin, Wigfall was never allowed to go inside the bathroom and close the door. (Tr. Trans., ECF NO. 7-3 at p. 328:1-10, 329:11-25). She was stopped as she was trying to close the door.

Furthermore, Wigfall testified that the drugs belonged to Neal and that he used her scales to weigh the drugs before a sale. This is bolstered by one officer's testimony that Neal told him the drugs were his (this statement was made outside of interrogation) and he sold methamphetamine. (Tr. Trans., ECF No. 7-3 at p. 363:13-20, 367:13-15, 368:14-18). Even if the interview been suppressed, it is likely the State had enough evidence to convict. Neal fails to show that the courts' alleged error had a substantial and injurious effect.

B. Ineffective Assistance of Counsel

Neal raises two claims of ineffective assistance of counsel: ineffective assistance of trial counsel and appellate counsel, both of which relate to the sufficiency of the State's evidence. Specifically, Neal argues that his trial lawyers' directed verdict motion was constitutionally deficient, and that his appellate lawyer failed to appeal the directed verdict motion.

As stated, Neal procedurally defaulted these claims. Neal argues that the *Martinez* exception should apply to an inmate who failed to timely file a Rule 37 motion. In support of his argument, Neal cites to two cases: *Castillo v. Kelley,* Case No. 5:14-CV-368 JM/BD and *Love v. Payne,* Case No. 5:19-CV-252 DPM. In *Castillo*, this Court accepted the recommendation of United States Magistrate Judge Beth Deere to apply *Martinez* to the ineffective assistance of counsel claim of Castillo, even though Castillo did not file a Rule 37 petition. In that case, the trial court judge presiding over Castillo's case explicitly told Castillo that he could not file a Rule 37 petition because he had pled guilty. For this reason, Judge Deere found that Castillo had established

the cause needed to consider his claim. [1] No such instruction was given to Neal. Neal has failed to establish cause for his default. As United States District Judge D.P. Marshall Jr. held in *Love*, "[t]here is no binding precedent" allowing *Martinez* to be expanded to include a case where a prisoner has failed to file a Rule 37 petition. *Love v. Payne,* 2020 WL 4508239 (E.D. Ark. 2020). Judge Marshall noted that courts are divided on the issue. He compared *Jones v. Pennsylvania Board of Probation and Parole,* 492 F. App'x 242, 246-47 (3d Cir. 2012) (unpublished opinion) and *Castillo v. Kelley,* 2015 WL 9595464, at *3 (E.D. Ark. 2015)).

As Judge Ray noted with respect to the ineffectiveness of appellate counsel claim, the Supreme Court has held that a federal habeus court is not allowed to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel claim based on the fact that a prisoner's state postconviction counsel has provided ineffective assistance by failing to raise the claim. *Davila v. Davis*, 582 U.S. 521 (2017).

Even if the Court were to consider Neal's argument for ineffective assistance at both the trial and appellate level, *i.e.*, that the State failed to prove constructive possession, and that trial counsel should have moved for a better directed verdict as well as a better appeal, his claims fail.

To support this claim, Neal cites the basic law on constructive possession in Arkansas:

> We have established the requisite proof for constructive possession in a long line of cases concerning joint occupancy. Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some *additional factor* must be present linking the accused to the contraband. The State must prove that the accused exercised care, control, and management over the contraband.

*Hodge v. State,* 303 Ark. 375, 377-78 (1990) (emphasis added). Neal asserts that the premises were jointly occupied, the drugs and paraphernalia were found in an adjoining room, and the premises was owned by Neal's girlfriend. He argues that the State lacked "some additional factor linking

---

[1] Judge Deere found that Castillo could not establish prejudice as required to excuse his procedural default.

Neal to the drugs and paraphernalia." (Objections, ECF No. 15 at p. 11). However, testimonial evidence is direct evidence, and two witnesses – an officer and Neal's girlfriend – testified against Neal. The jury was entitled to find this "additional factor" sufficient to establish the necessary link. Neal must also show that there would have been a "reasonable probability that, with an improved argument, there would have been a different verdict." *Strickland*, 466 U.S. at 694. As shown above, based on the testimony of Neal's girlfriend who claimed he lived there, as well as used the paraphernalia to weigh up and sell drugs, and the officer's testimony, a jury could reasonably find – even without the interrogation statements – that Neal was in fact guilty.

     V.     Conclusion

     The statements made during interrogation were ambiguous based on the totality of the circumstances and Neal's will was not overborne by the officers' statements to him. The Arkansas Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Moreover, the facts of the case fail to show that had the statements been suppressed there was a reasonable probability of a different verdict. Neal has failed to establish cause for the procedural default of his ineffective assistance of counsel claims.

     The Court concludes that the Recommendation should be, and hereby is, approved and adopted as this Court's findings in its entirety. Neal's Petition for Writ of Habeas Corpus is DENIED. This habeas action is DISMISSED with prejudice. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, no certificate of appealability will be issued.

     IT IS SO ORDERED this 18th day of June, 2025.

_____
UNITED STATES DISTRICT JUDGE